# In the United States Court of Federal Claims

BID PROTEST
No. 16-708C
Filed Under Seal October 6, 2016
Reissued October 17, 2016*
NOT FOR PUBLICATION

_____

)
TIKIGAQ CONSTRUCTION, LLC,      )
                                )
            Plaintiff,          )
                                )          28 U.S.C. § 1491(b); Pre-Award
v.                              )          Bid Protest; Corrective Action.
                                )
THE UNITED STATES,              )
                                )
            Defendant,          )
                                )
v.                              )
                                )
SAMES, INC.,                    )
                                )
            Intervenor-Defendant. )
                                )
_____

   *Robert J. Symon,* Counsel of Record, *Aron C. Beezley*, Of Counsel, Bradley Arant Boult Cummings LLP, Washington, DC, for plaintiff.

   *Adam E. Lyons*, Trial Attorney, *Scott D. Austin*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, *Carl Vernetti*, Attorney (Trade and Finance), United States Customs and Border Protection, Washington, DC, for defendant.

   *Katherine S. Nucci*, Counsel of Record, *Scott F. Lane*, Of Counsel, Thompson Coburn LLP, Washington, DC, for defendant-intervenor.

_____

* This Memorandum Opinion and Remand Order was originally filed under seal on October 6, 2016 (docket entry no. 45), pursuant to the Protective Order entered in this action on June 21, 2016 (docket entry no. 14). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the Protective Order. The parties filed a joint status report on October 17, 2016 notifying the Court that they do not believe any information should be redacted (docket entry no. 46). And so, the Court is reissuing its Memorandum Opinion and Remand Order dated October 6, 2016 without redactions.

<u>**MEMORANDUM OPINION AND REMAND ORDER**</u>

<u>GRIGGSBY, Judge</u>

## I.    INTRODUCTION

Plaintiff, Tikigaq Construction, LLC ("Tikigaq"), brought this pre-award bid protest matter challenging the United States Customs and Border Protection's ("CBP") proposed corrective action to address alleged evaluation errors in connection with a request for proposals to provide construction maintenance and repair services for a portion of the border fence located along the border between the United States and Mexico.  Tikigaq has moved for judgment upon the administrative record, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC").  The government and the defendant-intervenor, SAMES, Inc. ("SAMES"), have also moved for judgment upon the administrative record pursuant to RCFC 52.1.  In addition, Tikigaq has moved to supplement the administrative record, pursuant to RCFC 52.1.  For the reasons set forth below, the Court: (1) **GRANTS-IN-PART** Tikigaq's motion for judgment upon the administrative record; (2) **DENIES** the government's cross-motion for judgment upon the administrative record; (3) **DENIES** SAMES's cross-motion for judgment upon the administrative record; and (4) **DENIES**, as moot, Tikigaq's motion to supplement the administrative record.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  **Factual Background**

In this pre-award bid protest matter Tikigaq challenges the CBP's proposed corrective action to address alleged errors in the evaluation of proposals in connection with a request for proposals to provide construction maintenance and repair services for a portion of the border fence located along the border between the United States and Mexico ("RFP").  *See generally* Compl.; AR at 117-213.  The RFP contemplates award of a cost-plus-fixed fee contract.  AR at 126.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the administrative record ("AR"); Tikigaq's memorandum in support of its motion for judgment upon the administrative record ("Pl. Mem."); the government's motion for judgment upon the administrative record ("Def. Mot."); SAMES's motion for judgment upon the administrative record ("Int. Mot."); and Tikigaq's reply to the government's and SAMES's motions for judgment on the administrative record ("Pl. Reply").

1.      **The Request For Proposals**

In 2014, the CBP issued the RFP for maintenance and repair support along the border between the United States and Mexico.  *Id.* at 117, 128-29.  The RFP limited the competition to small business concerns certified under the United States Small Business Administration's ("SBA") 8(a) program.  *Id.* at 172.

Under the terms of the RFP, each responsive proposal was required to set forth "individual work elements and projects."  *Id.* at 143, 202.  The RFP provides that "[w]ork elements and projects shall describe a discrete set of work items . . . and the detailed estimated cost by work activity."  *Id.* at 143, 202.  The RFP also specifies that "[e]ach offeror's proposal submitted in response to this solicitation shall be prepared in two volumes: Volume I – Technical Proposal and Volume II – Cost/Price Proposal."  *Id.* at 196.

The RFP also requires that each offeror submit "information that is required to evaluate the reasonableness of the offeror's proposed cost/price."  *Id.* at 203.  In addition, the RFP provides that "failure to comply may result in rejection of the offeror's proposal."  *Id.* ("All information relating to the proposed cost/price, including all required supporting documentation must be included in the section of the proposal designated as the Cost/Price Volume.").  With respect to the submission of cost and price data, the RFP provides that:

> Along with the summary schedule [of labor, hours, and cost], the offeror is required to provide full back-up documentation for each work category . . . [which] shall include detailed cost/price amounts of all resources required to accomplish each work requirement . . . .  The offeror shall also provide supporting cost/price documentation, in the same format as specified in this section, for each subcontractor.  Subcontractors should submit proprietary data directly to the CO [(contracting officer)] in a separate, sealed envelope.

*Id.* at 204-05, 236-361.  In addition, the RFP provides that "[t]he offeror must respond to all of the requirements of the solicitation, and must include in his proposal all information specifically required in all sections of the solicitation."  *Id.* at 207.  Lastly, the RFP provides that "[t]he offeror is not granted an exception from the requirement to submit cost or pricing data unless otherwise notified by the Government."  *Id.*

2.      **Tikigaq's Proposal**

3

On January 9, 2015, the CBP received three proposals in response to the RFP, including proposals from Tikigaq and SAMES. *Id.* at 1608, 1617-2077.   In its proposal, Tikigaq proposed Primus Solutions, Inc. ("Primus") as one of its subcontractors. *Id.* at 1619.  Primus separately submitted its cost/price information in accordance with Tikigaq's proposal to the CBP on January 9, 2015. *Id.* at 1510-43.

After a third contractor withdrew from competition, the CBP held discussions with Tikigaq and SAMES on May 21, 2015. *Id.* at 1608.  On the same day, the CBP requested Final Proposal Revisions ("FPRs") from Tikigaq and SAMES. *Id.* at 1608, 2204.

On June 1, 2015, Tikigaq's representative, Mr. James Daniel, wrote to the CBP's contract specialist, Mr. Troy Brooks, asking, among other things, whether Tikigaq was required to "resubmit both Volumes I and II in their entirety or do we only resubmit the Cost volume and the Revised Cost Template?" AR at 2208-09.  In response, Mr. Brooks wrote, "please submit both Volumes I and II in their entirety along with the Revised Cost Template." *Id.* at 2208.

On June 4, 2015, SAMES and Tikigaq each timely submitted a FPR. *Id.* at 600-1131, 1398, 1608.  Tikigaq's FPR included Volumes I and II, along with the revised cost template. *Id.* at 992-1131.50.  But, Tikigaq did not resubmit Primus' cost/price information with its FPR. *Id*.  In addition, Primus did not submit any cost data directly to the CBP in connection with the final proposal.  Compl. at 12.

On September 23, 2015, the CBP awarded the subject contract to SAMES. AR at 1398, 2210-85.  Prior to making the award to SAMES, the CBP determined that Tikigaq's proposal provided the best value to the government. *Id.* at 1367, 1377, 1391.  But the agency subsequently deemed Tikigaq ineligible for award, because Tikigaq's business plan had not been filed with the SBA's Lower Rio Grande Valley District Office. *Id.* at 1399; *see* 48 CFR 52.219-18.

### 3.    Tikigaq's GAO Protest And The CBP's First Corrective Action

Following the award of the contract to SAMES, Tikigaq protested the award before the Government Accountability Office ("GAO") on October 5, 2015. *Id.* at 1392.  Specifically, Tikigaq protested: (1) the SBA's "determination that Tikigaq is ineligible to receive the contract award;" and (2) the agency's decision to accept the SBA's determination and to award the

contract to SAMES.  *Id.* at 1392.  As relief, Tikigaq requested that either it be awarded the contract, or that the GAO direct the CBP to reevaluate proposals in accordance with the RFP.  *Id.* at 1397.

On October 26, 2015, the CBP gave notice of its intention to take corrective action in response to Tikigaq's protest.  *Id.* at 1412.  The CBP subsequently undertook corrective action by obtaining a new size determination from the SBA regarding Tikigaq's eligibility under the 8(a) program.  *Id.* at 1412, 1417, 1419, 1423-24.  After the SBA determined that both Tikigaq and SAMES were eligible for award, the CBP awarded the contract to Tikigaq on March 23, 2016.  *Id.* at 1419, 1427, 1611, 2286-87.

### 4.    SAMES's GAO Protest And The CBP's Second Corrective Action

On April 4, 2016, SAMES filed a protest with the GAO challenging the award of the contract to Tikigaq.  *Id.* at 1427.  In this protest, SAMES initially stated four grounds for the protest:  (1) The "CBP's evaluation of SAMES'[s] technical proposal was unreasonable;" (2) The "CBP's [most probable cost] adjustments were unreasonable;" (3) "The CBP's cost-technical tradeoff analysis was seriously flawed;" and (4) Tikigaq is ineligible for award under the requirements of 48 C.F.R 52.219-18.  *Id.* at 1436-46.

Tikigaq subsequently sought summary dismissal of SAMES's protest, arguing, among other things, that SAMES had waived any challenge to the SBA's 8(a) re-determination by not challenging the CBP's decision to undertake corrective action during Tikigaq's prior bid protest.  *Id.* at 1466-67.  The GAO determined that SAMES had not waived its claim and held that "[t]he protest includes sufficient factual  presentation and argument to warrant further development of the record." *Id.* at 1476.  Thereafter, SAMES supplemented its protest to also argue that: (1) the award to Tikigaq was "improper because its subcontractor's supporting cost documentation was not submitted in a  timely manner;" and (2) that Tikigaq was ineligible because of its defective offer guarantee.  *Id.* at 1545.  On June 1, 2016, an attorney with the CBP's Office of Chief Counsel sent an email to the GAO advising of the "CBP's intention to perform corrective action." *Id.* at 1607.  Specifically, the CBP advised that it "intends to re-evaluate the proposals of the offerors, including obtaining a new 8(a) eligibility determination from SBA if deemed necessary, and issue a new award decision." *Id.*

On June 10, 2016, the GAO dismissed SAMES's protest in light of the CBP's decision to undertake corrective action. *Id.* at 1616.

This litigation challenging the CBP's proposed corrective action followed.

**B.  Procedural Background**

Tikigaq filed its complaint in this matter on June 17, 2016. *See generally* Compl.  On that same day, Tikigaq filed a motion for a temporary restraining order and a motion for a preliminary injunction. *See* Mot. for TRO; Mot. for PI.  Tikigaq also filed a motion for leave to file the complaint under seal, as well as a motion for a protective order on June 17, 2016. *See* Pl. Mot. for Leave; Mot. for Protective Order.  On June 20, 2016, SAMES filed a motion to intervene and answer in this matter.  Int. Mot.

On June 21, 2016, the parties participated in a telephonic status conference.  On that same date, the Court issued a Scheduling Order, granting Tikigaq's motion for leave to file its complaint under seal, and a Protective Order. *See generally* Scheduling Order; Protective Order.

On June 30, 2016, the government filed the administrative record in this matter, which the government subsequently corrected on July 13, 2016. *See generally* AR; Notice of Am. R. On July 1, 2016, Tikigaq filed a motion to supplement the administrative record.  Pl. Mot. to Suppl.  The government and SAMES filed their respective responses and oppositions to Tikigaq's motion to supplement on July 8, 2016.  Def. Resp. Mot. to Suppl.; Int. Resp. Mot. to Suppl.  On July 11, 2016, Tikigaq filed a reply in support of its motion to supplement the administrative record. Pl. Reply Mot. to Suppl.

On July 15, 2016, Tikigaq filed a motion for judgment upon the administrative record and memorandum in support of its motion. *See generally* Pl. Mot.; Pl. Mem.  On July 29, 2016, the government and SAMES filed their respective cross-motions for judgment upon the administrative record and responses to Tikigaq's motion for judgment upon the administrative record. *See generally* Def. Mot; Int. Mot.  On August 12, 2016, Tikigaq filed a reply in support of its motion for judgment upon the administrative record and its response to the cross-motions filed by the government and SAMES. *See generally* Pl. Reply.  Finally, on August 19, 2016, the government and SAMES filed their respective reply briefs in support of their cross-motions. *See*

*generally* Def. Reply; Int. Reply.  These matters having been fully briefed, the Court addresses the pending motions.

## III.   JURISDICTION AND LEGAL STANDARDS

### A.  Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an award may be set aside if: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id.* (quotations omitted).  In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  "The [C]ourt should not substitute its judgment for that of a procuring agency." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement

law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (citation omitted). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

This Court has also recognized that "[p]rocurement officials are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 150-51 (2015) (quoting *Impresa*, 238 F.3d at 1332 (internal quotation marks omitted)). "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 416 (1971). "Accordingly, the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa*, 238 F.3d at 1332–33 (citation and internal quotation marks omitted)*; accord Advanced Data Concepts*, 216 F.3d at 1058 ("The arbitrary and capricious standard . . . requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."). "In determining 'whether the contracting agency provided a coherent and reasonable explanation' of its decision, a court may only consider the grounds for the decision articulated by the agency." *Raytheon*, 121 Fed Cl. at 151 (quoting *Impresa*, 238 F.3d at 1332–33) (internal quotation marks omitted); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). And so, the Court cannot "supply a reasoned basis for the agency's action that the agency itself has not given . . . ." *Bowman Transp., Inc.*, 419 U.S. at 285–86. But, the Court can "uphold a decision of less than

ideal clarity if the agency's path may reasonably be discerned." *Id.* at 286 (citing *Colo. Interstate Gas Co. v. Fed. Power Comm'n*, 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945)).

### B. Corrective Action

The Court generally treats a challenge to an agency's corrective action involving the withdrawal of a contract award and the reopening of the competition as a pre-award bid protest matter. *See Sys. Applic. & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012). In addition, when applying the standard of review discussed above to an agency's corrective action, contracting officers are provided "broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." *DGS Contract Serv., Inc. v. United States,* 43 Fed. Cl. 227, 238 (1999) (citation omitted); *Amazon Web Servs., Inc. v. United States*, 113 Fed. Cl. 102, 115 (2013).

Nonetheless, an agency's corrective action must be "reasonable under the circumstances and appropriate to remedy the impropriety." *Amazon Web. Serv.*, 113 Fed. Cl. at 115 (quoting *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 527 (2012)); *see also Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496, 506 (2007) (citing *Chapman Law Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007)); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 151 (2010) ("[T]he agency's corrective action must be rationally related to the defect to be corrected.") (citation omitted); *WHR Grp., Inc. v. United States*, 115 Fed. Cl. 386, 405 (2014) ("The requirement that corrective action be 'targeted' or 'rationally related' to an existing defect in the initial procurement is essential to the integrity of the procurement system."); *but see Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 750-51 (2012)(holding that the corrective action need not always ("'target the identified defect.'" (quoting *Sheridan*, 95 Fed. Cl. at 153))). To be reasonable, the agency's corrective action must be rationally related to the defect to be corrected. *MCII Generator & Elec.*, No. 02-85C, 2002 WL 32126244 at *1. And so, the Court will enjoin an agency from implementing corrective action if the corrective action is unreasonable or if the corrective action fails to remedy the impropriety. *Id.*

In addition, as the Court explained in *Raytheon*, "[t]here can be no dispute that in a bid protest, the focal point of the Court's review of a procuring agency's decision is the administrative record." 121 Fed. Cl. at 152-153; *see also Camp v. Pitts*, 411 U.S. 138, 142 *(per*

*curiam); Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).  And so, the agency's corrective action must be supported by the evidence in the administrative record. *Raytheon*, 121 Fed. Cl. at 152-53.

### C.  Judgment Upon The Administrative Record

RCFC 52.1 limits the Court's review of an agency's procurement decision to the administrative record.  *Cf. Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379 ("'[T]he focal point for judicial review should be the administrative record already in existence . . . .'" (quoting *Camp*, 411 U.S. at 142)).  And so, unlike a summary judgment motion brought pursuant to RCFC 56, the existence of genuine issues of material fact does not preclude judgment upon the administrative record under RCFC 52.1.  *See* RCFC 56; *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011).  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

In addition, when deciding a bid protest matter, the Court "may award any relief that [it] considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2)*; see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1036-37.  But, a plaintiff must show an entitlement to injunctive relief by clear and convincing evidence to prevail upon a request for such relief.  *CSE Constr. Co., Inc. v. United States*, 58 Fed. Cl. 230, 261 (2003).  In considering whether to issue a permanent injunction, the Court looks to: (1) whether the plaintiff succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of hardships to the parties favors granting injunctive relief; "and (4) whether it is in the public interest to grant injunctive relief."  *CW Gov't Travel, Inc. v. United States*, 163 F. App'x 853, 857 (Fed. Cir. 2005)(*citing PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).  And so, a "plaintiff that has not actually succeeded [upon] the merits of its claim cannot prevail [upon a] motion for injunctive relief."  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).

### D.  Supplementing The Administrative Record

Lastly, the United States Court of Appeals for the Federal Circuit held in *Axiom Resource Management*, that the "parties' ability to supplement the administrative record is limited" and that the administrative record should only be supplemented "if the existing record is insufficient to permit meaningful review consistent with the APA." 564 F.3d at 1379-81*; see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). In *Axiom*, the Federal Circuit cited to the Supreme Court's decision in *Camp v. Pitts*, which stated that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." 564 F.3d at 1379 (quoting *Camp*, 411 U.S. at 142). This focus is maintained in order to prevent courts from using new evidence to "convert the arbitrary and capricious standard into effectively de novo review." *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671 (2009) (citations omitted). This Court has interpreted the Federal Circuit's directive in *Axiom* to mean that supplementation of the administrative record is permitted to correct mistakes and fill gaps, but is not permitted when the documents proffered are unnecessary for an effective review of the government's procurement decision. *Id.* at 672. And so, this Court has precluded supplementation of the administrative record with declarations that contain "post-hoc contentions of fact and argument." *Id*.

## IV.   LEGAL ANALYSIS

### A.  The Administrative Record Does Not Support The Proposed Corrective Action

The administrative record in this case does not support the CBP's proposed corrective action. In this regard, the administrative record demonstrates that, on June 1, 2016, the CBP sent an email to the GAO advising of its intention to perform corrective action to address the issues raised in SAMES's bid protests. AR at 1607. The CBP states in this email that the agency "intends to re-evaluate the proposals of the offerors, including obtaining a new 8(a) eligibility determination from SBA if deemed necessary, and issue a new award decision." *Id*. But, the CBP's notice of corrective action does not state what specific defects in the procurement the CBP intends to address in its proposed corrective action. *Id*. Nor does the CBP explain how the proposed corrective action will address or resolve these deficiencies. *Id.*

Without evidence in the record explaining why the CBP intends to take the corrective action -- or any explanation in the administrative record of which specific defects the corrective action is intended to address -- the Court cannot determine whether a rational basis exists for the

CBP's proposed corrective action in this case.  The government correctly argues in its briefs that it is not necessary for the CBP to formally set forth the reasons for its decision to take corrective action and that the Court can uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.  *Bowman Transp., Inc.,* 419 U.S. at 285–86.  But, the CBP's path simply cannot be reasonably discerned here.  *Id.*; *see also Colo. Interstate Gas Co.*, 324 U.S. at 595 (finding, in challenge to agency ratemaking, the record is sufficient unless the basis for the ratemaking is "so vague and obscure as to make the judicial review contemplated by the Act a perfunctory process.") (citations omitted).  Rather, the administrative record does not indicate which of the specific deficiencies raised in SAMES's protest before the GAO are to be addressed by the CBP's proposed corrective action.  AR at 1607.

In this regard, SAMES raised six different objections to the agency's decision to award the contract to Tikigaq in its GAO bid protest and supplemental protest: (1) The "CBP's evaluation of SAMES'[s] technical proposal was unreasonable;" (2) The "CBP's [most probable cost] adjustments were unreasonable;'" (3) "The CBP's cost-technical tradeoff analysis was seriously flawed;" (4) Tikigaq is ineligible for award under the requirements of 48 C.F.R 52.219-18; (5) the award to Tikigaq was "improper because its subcontractor's supporting cost documentation was not submitted in a timely manner;" and (6) Tikigaq was ineligible because of its defective offer guarantee.  *Id.* at 1436-46, 1545.  The agency's notice of corrective action does not mention any of these grounds.  *Id.* at 1607.  Nor does the administrative record demonstrate how the proposed corrective action will resolve the acknowledged deficiencies with the evaluation of the proposals for the subject contract.  *Id.*

In addition, especially troubling to the Court is the fact that the CBP's notice of corrective action does not indicate whether the agency's corrective action will address a key allegation raised by SAMES in its bid protest−that Tikigaq is ineligible for award of the contract because Tikigaq failed to resubmit its subcontractor's cost/price data with its Final Proposal Revisions.  And so, based upon a review of the administrative record, it is not clear to the Court what matters the CBP intends to address by its proposed corrective action, nor is it clear to the Court how the agency plans to resolve these concerns.

## B.  A Remand Of This Matter Is Appropriate

Given the lack of information in the administrative record to explain or support the CBP's proposed corrective action, a remand of this matter to the agency to clarify and explain its proposed corrective action is appropriate.

The Tucker Act gives this Court the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just," and RCFC 52.2 sets forth the procedural framework that governs the remand process.  28 USC §1491(a)(2); RCFC 52.2; *see Santiago v. United States*, 71 Fed. Cl. 220 (2006) (denying the government's motions for partial dismissal and for judgment upon the administrative record, granting in part plaintiffs' cross-motion for judgment upon the administrative record, and remanding the case to the Secretary of the Army for further proceedings).

In this regard, RCFC 52.2 provides that, "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official."  RCFC 52.2.  Specifically, RCFC 52.2 states that such a court order must direct parties as the Court deems proper and just; establish the duration of the remand of a period of up to six months; specify whether court proceedings will be stayed during the remand period; and ask a party to report to the Court at least every 90 days regarding the status of the remand proceedings.  *Id.*  A certified copy of the order must also be served on each party, as well as "the administrative or executive body or official to whom the order is directed."  *Id.*

Because the administrative record here is devoid of any evidence to explain the basis for the CBP's decision to take corrective action, a remand of this matter to the agency is needed so that the CBP can conduct an analysis to support its decision to take corrective action.  *Cf. Macaulay-Brown, Inc. v. United States*, 125 Fed. Cl. 591, 605 (2016).  And so, the Court remands this matter to the CBP to allow the agency to determine which specific evaluation criteria it seeks to address pursuant to the agency's proposed corrective action and, specifically, to determine whether and how the corrective action will address the fact that Tikigaq did not submit its subcontractor's cost/price data with the final proposal.  RCFC 52.2.

### C.  The Court Denies As Moot Tikigaq's Motion To Supplement

As a final matter, Tikigaq has also moved to supplement the administrative record with the Declaration of Stephen Christensen, a copy of Mr. Christensen's handwritten notes

memorializing a May 28, 2015 telephone conversation with Troy Brooks and certain other communications.  Mot. to Suppl.  Because the Court finds that a remand of this matter to the CBP is appropriate, the Court denies Tikigaq's motion to supplement as moot.

## V.     CONCLUSION

In sum, the administrative record in this matter clearly demonstrates that the CBP's proposed corrective action in this case is not supported, or even explained, by the current record evidence.  Given this, the Court cannot ascertain a rational basis for the agency's proposed corrective action.  And so, a remand of this matter to the CBP is warranted.

And so, for the foregoing reasons, the Court:

1. **GRANTS-IN-PART** Tikigaq's motion for judgment upon the administrative record;
2. **DENIES** the government's cross-motion for judgment upon the administrative record;
3. **DENIES** SAMES's cross-motion for judgment upon the administrative record; and
4. **DENIES**, as moot, Tikigaq's motion to supplement the administrative record.

It is **ORDERED** that, pursuant to RCFC 52.2, this matter is **REMANDED** to the CBP until **January 6, 2017** to allow the agency to consider and identify the specific evaluation criteria for the subject solicitation that it seeks to address pursuant to the agency's proposed corrective action and, specifically, whether and how the proposed corrective action will address the fact that Tikigaq did not submit its subcontractor's cost/price data with its Final Proposal Revisions.

It is further **ORDERED** that this matter shall be **STAYED** during the remand before the CBP.

It is further **ORDERED**, that the parties shall **FILE** a joint status report on or before **November 7, 2016**, and every 30 days thereafter, regarding the status of the remand proceedings.

If is further **ORDERED** that, pursuant to RCFC 52.2(e), on or before **January 6, 2017** either the CBP shall forward to the Clerk two copies of the decision or a statement of the action taken in response to this Remand Order, or, if the case is resolved at the administrative level, Tikigaq shall file a motion to dismiss the case with prejudice.

In addition, it is further **ORDERED** that, in accordance with RCFC 52.2(f), no more than 30 days after the filing of the CPB's decision or statement of the action taken on remand, the parties shall each **FILE** a notice stating their respective views on:

1. Whether the CPB's decision or other action on remand provides a basis for disposition of this case; or
2. Whether further proceedings are required and, if so, a description of those proceedings.

RCFC 52.2(f).

Lastly, some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on June 21, 2016. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

And so, it is further **ORDERED** that the parties shall **FILE** a joint status report, on or before **October 27, 2016**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Remand Order, together with an explanation of the basis for each proposed redaction.

The Clerk is directed to serve a certified copy of the remand order on each party and the CBP in accordance with RCFC 5.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge